# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

LADONNA COWARD,         :
:
     Plaintiff,         :
:
v.               :     CIVIL ACTION NO.
:     1:11-CV-00383-RWS
DET. J. M. SIMONE, in his    :
individual capacity and official    :
capacity as law enforcement officer  :
with Sandy Springs Police     :
Department; DET. THOMAS, in    :
his individual capacity and official  :
capacity as law enforcement officer  :
with Sandy Springs Police     :
Department; and SANDY      :
SPRINGS d/b/a SANDY       :
SPRINGS POLICE         :
DEPARTMENT,         :
:
     Defendants.       :

## ORDER

This case comes before the Court on Defendants' Motion for Summary

Judgment [27].  After reviewing the record, the Court enters the following

Order.

### Background

This case arises out of Plaintiff's arrest for the crime of making false

statements to the police. The undisputed facts are as follows.[1] On September 30, 2007, Plaintiff was charged with driving 90 miles per hour in a 55 mile per hour speed zone in Clayton County, Georgia. (Defs.' SMF, Dkt. [27-2] ¶ 1.) The criminal case against her was filed in Clayton County State Court on February 13, 2008. (Id.) Plaintiff failed to appear for her arraignment on January 20, 2009, whereupon the Clayton County State Court judge issued a bench warrant for her arrest. (Id.)

On September 6, 2009, a woman named Fantasia Byrd was murdered at an apartment complex in the southern part of the City of Roswell, Georgia, adjacent to the City of Sandy Springs, Georgia. (Id. ¶ 2.) A City of Roswell detective, Skip Tucker, was the lead detective assigned to investigate the Byrd homicide. (Id.) Mr. Tucker discovered that a few hours before the homicide,

---

[1] The facts are taken from Defendant's Statement of Material Facts As To Which There Is No Genuine Issue To Be Tried ("Def.'s Statement of Material Facts" or "Def.'s SMF"), Dkt. [27-2]. Because Plaintiff failed to respond to Defendant's Statement of Material Facts, the facts therein are deemed admitted. See LR 56.1 B.(2)(a), NDGa ("This Court will deem each of the movant's facts as admitted unless the respondent: (i) directly refutes the movant's fact with concise responses supported by specific citations to evidence (including page or paragraph number); (ii) states a valid objection to the admissibility of the movant's fact; or (iii) points out that the movant's citation does not support the movant's fact or that the movant's fact is not material or otherwise has failed to comply with the provisions set out in LR 56.1 B.(1).").

the perpetrators may have been involved in a bar fight in the City of Sandy

Springs; Mr. Tucker also discovered that one Kevin Coward, Plaintiff's brother,

may have been involved in both the Sandy Springs bar fight and the murder of

Ms. Byrd in Roswell.  (Id. ¶¶ 3-4.)  Mr. Tucker contacted Detective Jeff

Thomas ("Defendant Thomas") of the Sandy Springs police department in

September of 2009 and asked for the assistance of Sandy Springs in the Byrd

homicide investigation.  (Id. ¶ 5.)  Mr. Tucker coordinated the investigation

with the City of Sandy Springs for several reasons, including that the homicide

took place near the jurisdiction of Sandy Springs; the suspects were believed to

have been involved in a bar fight in Sandy Springs just prior to the homicide;

and one of the suspects, Kevin Coward, was believed to reside in Sandy

Springs.  (Id.)

Detective Joseph Simone ("Defendant Simone") of the Sandy Springs

police department assisted Defendant Thomas with the homicide investigation.

(Id. ¶ 8.)  To that end, on September 11, 2009, in the City of Sandy Springs,

Defendants Thomas and Simone contacted one Wanda White, another sister of

Kevin Coward, in an attempt to discover Mr. Coward's whereabouts.  (Id. ¶ 9.)

Ms. White informed Defendants Thomas and Simone that Mr. Coward

3

occasionally resided in a certain apartment complex in Sandy Springs.  (Id. ¶ 10.)

Defendants Thomas and Simone thus proceeded to the apartment complex and made contact with an individual matching the description of Mr. Coward, who appeared to be attempting to flee the scene in a car driven by a young woman.  (Id. ¶ 12.)  Defendants confronted the individual, confirmed him to be Mr. Coward, and then detained him until Roswell police officers arrived to take him into custody for questioning regarding the Byrd homicide.  (Id. ¶ 13.)  Roswell police officers took Mr. Coward into custody without incident.  (Id. ¶ 17.)

The driver of the vehicle was identified as Ladonna Coward, Mr. Coward's sister and Plaintiff herein.  (Id. ¶¶ 14, 18.)  Defendant Thomas attempted to question Plaintiff regarding her brother's possible involvement in the Byrd homicide.  (Id. ¶ 18.)  Plaintiff, however, refused to answer his questions, advising that she could not speak with him because she was on her way to the airport to fly that evening to Miami, Florida, where she said she would remain for at least one week.  (Id.)  Defendant Thomas gave Plaintiff his business card and asked her to call him when she returned from Miami, which

4

she agreed to do.  (Id. ¶ 20.)  Plaintiff thus left the scene on September 11, 2009.  (Id. ¶ 21.)

Plaintiff, however, did not fly to Florida on the evening of September 11, 2009.  (Id. ¶ 22.)  Instead, Plaintiff went to Ms. White's house in Sandy Springs and made repeated phone calls to the Roswell Jail during the evening of September 11, 2009 and morning of September 12, 2009, inquiring about the status of her brother and his criminal charges.  (Id.)  Plaintiff also went to the Roswell Jail approximately two times during the late evening hours of September 11, 2009 and early morning hours of September 12, 2009 and spoke with two different employees about her brother's status.  (Id. ¶ 23.)

On September 14, 2009, Officer Bradley of the Roswell police department informed Defendant Thomas that he had seen Plaintiff at the Roswell Jail on September 12, 2009.  (Id. ¶ 24.)  Defendant Thomas called Plaintiff on the same day and asked her if she had gone on her trip to Florida and if she was back in town.  (Id. ¶ 25.)  Plaintiff advised Defendant Thomas that she had gone on her trip to Florida and had gotten back in town on September 13, 2009.  (Id. ¶ 26.)  Apart from this September 14, 2009 phone conversation and the initial conversation that took place on September 11, 2009,

5

Plaintiff had no other conversation with either Defendant Thomas or Defendant Simone regarding her travel plans. (Id. ¶ 27.)

Based on Plaintiff's statements and the information received from Officer Bradley of the Roswell police department, Defendant Thomas believed that Plaintiff had deliberately lied to him regarding her whereabouts during the Byrd homicide investigation and her brother's possible involvement in the homicide. (Id. ¶ 28.) Based on the totality of the evidence before him, Defendant Thomas concluded that probable cause existed to believe that Plaintiff had committed the crime of making false representations to police in violation a Sandy Springs ordinance. (Id. ¶ 29.) Defendant Thomas informed Defendant Simone of all the critical facts that supported this belief and, because he was working on a time sensitive project in another case, asked Defendant Simone to apply for the arrest warrant. (Id. ¶ 30.)

Based on the information provided by Defendant Thomas, Defendant Simone prepared an affidavit for the arrest of Plaintiff for the crime of making false representations to police. (Id. ¶ 31.) Defendant Simone presented the affidavit to a Sandy Springs Municipal Court judge and provided live testimony to support issuance of a warrant. (Id. ¶ 32.) After reviewing the affidavit and

AO 72A
(Rev.8/82)

hearing Defendant Simone's sworn testimony, the judge issued an arrest warrant on September 14, 2009. (Id. ¶ 33.)

While Plaintiff was waiting at the Roswell Jail on September 14, 2009, two detectives employed by the City of Roswell arrested Plaintiff pursuant to the Clayton County arrest warrant that was issued on January 20, 2009, after Plaintiff failed to appear for her arraignment in the speeding case. (Id. ¶ 34.) The same Roswell detectives took Plaintiff to booking where she was fingerprinted, photographed, and placed in a detention cell. (Id. ¶ 35.) After approximately two hours, Plaintiff was removed from the detention cell, whereupon Defendant Thomas escorted her to a Sandy Springs police cruiser. (Id. ¶ 36.) Defendants Thomas and Simone took Plaintiff into custody based on the Sandy Springs arrest warrant and the pre-existing warrant from Clayton County. (Id. ¶ 37.)

Defendants Thomas and Simone transported Plaintiff to the Doraville Detention Center, where she was booked in on both the Sandy Springs and Clayton County warrants. (Id. ¶ 39.) Plaintiff's booking report reflects that she had been granted an "O/R bond" by the Sandy Springs judge; as such, if Plaintiff had only been charged with the Sandy Springs offense, she would have

been released on her own recognizance after being fingerprinted and positively identified and after all release procedures had been completed.  (Id. ¶ 41.) Plaintiff remained in the Doraville Detention Center after being fingerprinted and positively identified, and after the Doraville release procedures had been completed, however, because she had a hold from Clayton County based on the outstanding Clayton County arrest warrant.  (Id. ¶ 43.)  Doraville authorities thus detained Plaintiff until a deputy from Clayton County arrived to take her into custody, which occurred on September 16, 2009.  (Id. ¶¶ 44-45.)  Prior to September 11, 2009, Plaintiff did not know Defendant Thomas or Defendant Simone, and neither Defendant knew Plaintiff.  (Id. ¶¶ 46-47.)

Following the foregoing events, Plaintiff filed a Complaint against the City of Sandy Springs (d/b/a Sandy Springs Police Department) and Defendants Thomas and Simone,  pursuant to 42 U.S.C. § 1983,[2] raising claims for false

_____

[2] 42 U.S.C. § 1983 provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

AO 72A
(Rev.8/82)

arrest and false imprisonment under federal and Georgia law.  (See generally Dkt. [1].)  Plaintiff also raises state law claims for intentional infliction of emotional distress and simple battery against all Defendants, and a state law claim for negligent hiring, supervision, and control against Defendant City of Sandy Springs.  (Id.)  Finally, Plaintiff contends she has raised federal and state law claims for malicious prosecution (see generally Pl.'s Br. in Opp'n to Defs.' Mot. for Summ. J., ("Pl.'s Br. in Opp'n"), Dkt. [30]), which contention Defendants dispute (see generally Mem. of Law in Supp. of Defs.' Mot. for Summ. J. ("Defs.' Mem."), Dkt. [27-1]).  Defendants now move for summary judgment on all claims.  The Court sets out the legal standard governing a motion for summary judgment before considering Defendants' Motion on the merits.

## Discussion

## I.  Legal Standard

Federal Rule of Civil Procedure 56 requires that summary judgment be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "The moving party bears 'the initial responsibility of informing the . . .

AO 72A
(Rev.8/82)

court of the basis for its motion, and identifying those portions of the pleadings,

depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any, which it believes demonstrate the absence of a genuine issue

of material fact.'" Hickson Corp. v. N. Crossarm Co., 357 F.3d 1256, 1259

(11th Cir. 2004) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)

(internal quotations omitted)).  Where the moving party makes such a showing,

the burden shifts to the non-movant, who must go beyond the pleadings and

present affirmative evidence to show that a genuine issue of material fact does

exist.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257  (1986).

The applicable substantive law identifies which facts are material.  Id. at

248.  A fact is not material if a dispute over that fact will not affect the outcome

of the suit under the governing law.  Id.  An issue is genuine when the evidence

is such that a reasonable jury could return a verdict for the non-moving party.

Id. at 249-50.


Finally, in resolving a motion for summary judgment, the court must

view all evidence and draw all reasonable inferences in the light most favorable

to the non-moving party.  Patton v. Triad Guar. Ins. Corp., 277 F.3d 1294, 1296

(11th Cir. 2002). But, the court is bound only to draw those inferences which are reasonable. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50 (internal citations omitted); see also Matsushita, 475 U.S. at 586 (once the moving party has met its burden under Rule 56(a), the nonmoving party "must do more than simply show there is some metaphysical doubt as to the material facts").

## II.     Analysis

As stated in the Background section, supra, Plaintiff raises claims against Defendants for false arrest and false imprisonment under federal and state law and for intentional infliction of emotional distress and simple battery under state law. She also raises a claim for negligent hiring, supervision, and control against Defendant City of Sandy Springs. Finally, Plaintiff contends that she has raised federal and state law claims for malicious prosecution, which Defendants dispute. Nonetheless, Defendants contend they are entitled to

11

judgment as a matter of law on each of these claims.

As a threshold matter, Plaintiff has abandoned her state law claim for intentional infliction of emotional distress. (Pl.'s Br. in Opp'n, Dkt. [30] at 16.) Defendants' Motion for Summary Judgment therefore is **GRANTED** as to this claim. Additionally, Plaintiff failed to respond to Defendants' Motion for Summary Judgment on her claims for battery and negligent hiring, supervision, and control. (See generally id.) The Court therefore finds these claims abandoned and summary judgment due to be **GRANTED** to Defendants. See, e.g., Burnette v. Northside Hosp., 342 F. Supp. 2d 1128, 1140 (N.D. Ga. 2004) ("Failure to respond to the opposing party's summary judgment arguments regarding a claim constitutes abandonment of that claim and warrants the entry of summary judgment for the opposing party."). In light of the foregoing, the Court need only consider Plaintiff's claims for false arrest and false imprisonment under federal and state law and, to the extent the claim is raised, for malicious prosecution under federal and state law.


A.    Section 1983 False Arrest and False Imprisonment

The Court finds that Defendants are entitled to summary judgment on

AO 72A
(Rev.8/82)

Plaintiff's federal law claims for false arrest and false imprisonment.[3]  A

Section 1983 cause of action for false arrest or false imprisonment arises from

"detention *without legal process*."  Wallace v. Kato, 549 U.S. 384, 389 (2007)

(emphasis in original).  Thus, where an arrest is made pursuant to a warrant, a

form of legal process, a cause of action for false arrest or false imprisonment

based on the arrest will not lie.  Id.  On the contrary, the tort of malicious

prosecution is the exclusive remedy for a confinement pursuant to legal process.

Id. at 390; see also Washington v. St. Lawrence, No. CV412-062, 2012 WL

2792319, at *1 (S.D. Ga. June 19, 2012) ("The constitutional tort of false

imprisonment (or false arrest) arises from 'detention *without legal process*.' . . .

Because [the plaintiff] was arrested pursuant to legal process (i.e., an arrest

warrant), he has not stated facts supporting a false imprisonment claim.

Instead, he appears to assert 'the entirely distinct' tort of malicious prosecution,

which remedies detention arising from the *wrongful institution* of legal

process.'") (quoting Wallace, 549 U.S. at 389, 390).

---

[3] Under federal law, false arrest and false imprisonment are overlapping causes of action: "the former is a species of the latter."  Wallace v. Kato, 549 U.S. 384, 388 (2007).  This is because every confinement of the person–whether it be in a prison or some other place–constitutes an "imprisonment."  Id.

AO 72A
(Rev.8/82)

Plaintiff does not dispute that she was arrested by Defendants Thomas and Simone pursuant to a warrant. Therefore, as Defendants argue (Defs.' Mem., Dkt. [27-1] at 10-11), Plaintiff's Section 1983 claims for false arrest and false imprisonment fail as a matter of law. Defendants' Motion for Summary Judgment therefore is due to be **GRANTED** as to these claims.

B.    Section 1983 Malicious Prosecution

To the extent Plaintiff has raised a Section 1983 claim for malicious prosecution, the Court finds the claim to fail as a matter of law. "To establish a federal malicious prosecution claim under § 1983, the plaintiff must prove a violation of his Fourth Amendment right to be free from unreasonable seizures in addition to the elements of the common law tort of malicious prosecution."[4] Wood v. Kesler, 323 F.3d 872, 881 (11th Cir. 2003). The elements of the common law tort of malicious prosecution are: "(1) a criminal prosecution instituted or continued by the present defendant; (2) with malice and without

---

[4] Defendants argue that no claim for malicious prosecution is raised in the Complaint. (Mem. of Law in Supp. of Defs.' Mot. for Summ. J. ("Defs.' Mem."), Dkt. [27-1] at 9 n.3, 14 n.5.) Because Plaintiff alleges, generally, that she was subjected to an unreasonable seizure in violation of the Fourth Amendment (Compl., Dkt. [1] ¶ 4), the Court will consider the viability of a claim for malicious prosecution on the facts of this case.

14

probable cause; (3) that terminated in the plaintiff accused's favor; and (4) caused damage to the plaintiff accused." Id. at 881-82 (citation omitted). Thus, where probable cause exists for an arrest, a subsequent claim for malicious prosecution will fail as a matter of law. See, e.g., Brock v. City of Zephyrhills, 232 F. App'x 925, 928 (11th Cir. 2007) ("The absence of probable cause is a necessary element for a claim of malicious prosecution. . . . Because probable cause existed for [the plaintiff]'s arrest, his claim of malicious prosecution fails.").

The Court finds that any claim for malicious prosecution fails as a matter of law because Defendants Thomas and Simone had probable cause to arrest and charge Plaintiff with the crime of making false representations to the police. "Probable cause to arrest exists when the facts and circumstances within the *collective knowledge of law enforcement officers, or of which they have reasonably trustworthy information*, would cause a prudent person to believe that the suspect has committed or is committing an offense." Craig v. Singletary, 127 F.3d 1030, 1042 (11th Cir. 1997) (emphasis added).

In this case, Defendant Thomas formed the belief that Plaintiff had deliberately lied to him regarding her whereabouts and her availability to

15

answer questions regarding Mr. Coward's possible involvement in the Byrd homicide, based on the following facts and circumstances. First, on September 11, 2009, Plaintiff refused to answer Defendant Thomas's questions regarding Mr. Coward's possible involvement in the Byrd homicide, telling Defendant Thomas that she was en route to the airport to fly to Miami, where she claimed she would remain for at least one week. At the same time, Plaintiff told Defendant Thomas that she would call him when she returned. Second, on September 14, 2009, Defendant Thomas learned from Officer Bradley of the Roswell police department that Plaintiff had been present at the Roswell Jail on the morning of September 12, 2009, inquiring about Mr. Coward's status. Finally, on September 14, 2009, Defendant Thomas called Plaintiff, who said that she had gone on her trip to Florida and returned on September 13, 2009.

Defendant Thomas informed Defendant Simone, a fellow detective who was also investigating the Byrd homicide, of the foregoing facts that supported his belief that Plaintiff had lied; he asked Defendant Simone to prepare an affidavit for a warrant for Plaintiff's arrest. Defendant Simone prepared the affidavit, presented it to a municipal court judge, and provided live testimony to support issuance of the warrant. The warrant thereafter issued.

16

The Court finds the foregoing facts and circumstances sufficient to cause a prudent person to believe that Plaintiff had committed the offense of making false representations to police (i.e., sufficient to support probable cause). Plaintiff makes two primary arguments in support of her contention that probable cause was lacking: first, Plaintiff argues that the warrant affidavit contained knowing misrepresentations because Defendant Simone lacked personal knowledge of any of the facts or circumstances upon which the affidavit was based.  (Pl.'s Br. in Opp'n, Dkt. [30] at 6-10.)  Second, Plaintiff argues that Defendants Thomas and Simone did not have sufficient information to establish probable cause; in particular, Plaintiff contends that Defendant Thomas only asked Plaintiff whether she had gone to Miami and when she had returned, and that Defendants should have asked her *when* she left and whether she had changed her travel plans.  (Id. at 10-11.)

The Court finds these arguments unpersuasive.  The fact that Defendant Simone, rather than Defendant Thomas, prepared the warrant affidavit is of no moment.  As stated above, probable cause exists when the facts and circumstances within the *collective knowledge of law enforcement officers* is sufficient to lead a prudent person to believe the suspect has committed an

offense.  This standard has been satisfied in this case.  With regard to Plaintiff's second argument, the Court finds that the information known to Defendants was sufficient to establish probable cause and that Defendants were not required to investigate further prior to obtaining a warrant for Plaintiff's arrest.  As the Eleventh Circuit has explained, "[W]hile a police officer should consider a suspect's explanation in evaluating the existence of probable cause, he is under no obligation to give any credence to a suspect's story *nor should a plausible explanation in any sense require the officer to forego arrest pending further investigation if the facts as initially discovered provide probable cause*."  Williams v. City of Homestead, 206 F. App'x 886, 888-89 (11th Cir. 2006) (emphasis added).  Accordingly, because Plaintiff's arrest was supported by probable cause, her Section 1983 malicious prosecution claim fails as a matter of law.[5]  Defendants' Motion for Summary Judgment therefore is **GRANTED** as to this claim.

    C.      State Law False Arrest and False Imprisonment

    The Court finds that Defendants also are entitled to summary judgment

---

[5] The claim also fails for the added reason that Plaintiff has put forward no evidence that Defendants Thomas or Simone acted with malice.  See discussion at footnote 6, infra.

on Plaintiff's state law claims for false arrest and false imprisonment. Under

Georgia law, the elements of a claim for false arrest are: "(1) an arrest under

process of law, (2) without probable cause, and (3) made maliciously."

Desmond v. Troncalli Mitsubishi, 532 S.E.2d 463, 467 (Ga. Ct. App. 2000).

Probable cause is lacking "when the circumstances are such as to satisfy a

reasonable man that the accuser had no ground for proceeding but his desire to

injure the accused." O.C.G.A. § 51-7-3. Stated conversely, probable cause

exists when the facts and circumstances are such "as would excite the belief in a

reasonable mind, that the person charged was guilty of the crime for which she

was arrested." McLeod v. Wal-Mart Stores, Inc., No. CV 511-080, 2012 WL

2930769, at *7 (S.D. Ga. July 18, 2012) (citing Gibbs v. Loomis, Fargo & Co.,

576 S.E.2d 589, 592 (Ga. Ct. App. 2003)).

By contrast, the essential element of a claim for false imprisonment under

Georgia law is a detention *without legal process*. Ferrell v. Mikula, 672 S.E.2d

7, 10 (Ga. Ct. App. 2008) (emphasis added). Thus, unlike federal law, Georgia

law treats false arrest and false imprisonment as separate and distinct torts. Id.

"An arrest 'under process of law' is an arrest made pursuant to a warrant[,] and

the key distinction between [false] arrest and false imprisonment under

[Georgia law] is whether the person was detained using a warrant or not." Id.

Plaintiff's claim for false arrest fails as a matter of law because, as explained in Part II.B, supra, in connection with Plaintiff's Section 1983 malicious prosecution claim, Plaintiff's arrest was supported by probable cause. Plaintiff's claim for false imprisonment likewise fails as a matter of law because it arises out of an arrest made pursuant to a warrant. Accordingly, Defendants' Motion for Summary Judgment is **GRANTED** as to these claims.

D. State Law Malicious Prosecution

Under Georgia law, "to prevail on a claim for malicious prosecution, a plaintiff must demonstrate that: (1) the prosecution was instituted maliciously, (2) without probable cause, and (3) has terminated favorably to the plaintiff." Condon v. Vickery, 606 S.E.2d 336, 339 (Ga. Ct. App. 2004). "Want of probable cause is the gravamen of an action for malicious prosecution; and there can be no recovery by the plaintiff where there was any probable cause for the prosecution . . . ." Id. (internal quotations and citation omitted). As explained in Part II.B, supra, in connection with Plaintiff's Section 1983 malicious prosecution claim, Plaintiff's arrest was supported by probable cause. Her state law claim for malicious prosecution, like her Section 1983 claim,

therefore fails as a matter of law,[6] and Defendants' Motion for Summary is **GRANTED** as to this claim.

## Conclusion

In accordance with the foregoing, Defendants' Motion for Summary Judgment hereby is **GRANTED**.

**SO ORDERED**, this __24th__ day of September, 2012.


_Richard W. Story_

**RICHARD W. STORY**
United States District Judge

---

[6] Plaintiff's claim also fails as a matter of law for the added reason that she has failed to show any evidence of malice. "Malice consists of: (1) personal spite, or (2) general disregard of the right consideration of mankind, directed by chance against the individual injured." Desmond, 532 S.E.2d at 467. There is no evidence in the record that could support a finding of malice on the part of Defendants Thomas or Simone. On the contrary, it is undisputed that prior to September 11, 2009, Defendants did not know Plaintiff and Plaintiff did not know Defendants, and there is nothing in the record to suggest that Defendants were motivated by spite or any other ill will.

AO 72A
(Rev.8/82)